Good morning, Your Honor. My name is Fred Lang. I'm representing Mr. Rondhawa. Thank you. Your Honor, basically what we have here is the decision by the Board of Immigration Appeals, which is deficient in many aspects, particularly the reason for the whole appeal. Why doesn't Kalal control this case? Well, according to the government, it does. Why doesn't it? You must have an argument for distinguishing it, and I'm not sure I understand what it is. Bona allows a parolee coming back from, you know, leaving on advance parole, then returning to the United States to adjust his status. The second part of that is that this Court, the Fifth Circuit, the Second Circuit, have all looked at the issue about what happens to an immigration status prior to leaving the United States. For example, if you were here illegally and you adjusted status, as long as you didn't leave the United States, you would be protected. However, according to case law, if you left the United States, that protection disappears. All the immigration status... If I understand this right, Kalal answered a lot of the questions, and maybe I don't. It looks to me like he came in on a 90-day visa to marry his fiancée. That is correct, Your Honor. The law is you dance with the one that brung you. That is correct. He didn't marry the fiancée. That is correct. A quarter of a century later, he's still here. He was ordered deported, but it was an absentia, so maybe he never got the order. That's correct. He didn't leave. He was mistakenly paroled, but the parole is treated as though he's not in the country. He's on the border waiting to get in on his, but it's past the 90 days that he had to marry the fiancée, 25 years past it. Well, the issue is there's been intervening circumstances since that time, and that's the basis for this argument. The intervening circumstances, he self-deported. He left the United States. And this is the issue that the government is not addressing is does a K-1 245B... Beg your pardon? Kalal doesn't control that? Kalal controls whatever's in the United States without having left the United States. There's other case law, like the Ninth Circuit, that states that when you leave the United States, or even, well, let's just take basic immigration law. If a person comes here, for example, as a K-1 fiancée, then they have problems. They don't want to get married, so he leaves within the 90 days. He departs one year, two years, five years, ten years later. He comes back, student, visitor, business, and he meets somebody who is a U.S. citizen, and he marries that person. Through independency of the adjustment of status and the petition for alien relative, they have a child in common. Now, is this person now barred from adjusting status because he did not marry that K-1 that originally petitioned for him? Even though that K-1 beneficiary did leave the United States appropriately without violating any laws, I do not believe that's how the court would read it. The court would read it that when you comply, and this is not exactly as Mr. Randhawa's case, but it's on point in a particular way. What the court would read is that if you leave here, you know, if you come as a B-2 visitor and you leave within your time, you haven't violated any laws. So the next time you come, they can't say something that happened before was used against you because you did not violate the law. In particular, the K-1 status, when does it end that the strictures say you cannot come back and get an adjustment of status? It would end logically when you leave the United States, you self-deport, you leave the United States and come back in a new status. Your case law says... On what right did he remain here after his time expired and he didn't marry the person he was supposed to marry? But under what authority was he lawfully here? There was no authority. He's illegally overstaying, but that's not the issue, Your Honor. The issue is, first, did he marry his fiancée within 90 days? He did not. So 245D would bar him from adjusting status in the United States. However, if you leave the United States... That's Collel, right? That's correct, Your Honor. So why doesn't Collel bar him? Because he left the United States, and that terminates whatever visa status he had at that point in time. Where do you get that from? Well, BONA is one of them that says when you come back in advance parole, the Board of Immigration Appeals strictly says that. Yeah, but the BONA people didn't have the other bar that Collel had and that your guy has. Right. So the question to the Court is, at what point can this person clear up the K-1 thing, or is it for the rest of his life that he can never come back and never adjust status? The question you're raising is an open question, isn't it? In other words, does the restrictions on the K-1 visa terminate on self-deportation the way you characterize it, right? Yes, Your Honor. And, in effect, does he get to start all over again? Correct. There's no case right on point, right? That's correct. In that circumstance. Right. Now, answer this question then. But didn't he sort of continue to have some benefit to the K-1 visa in the sense that he left on advance parole, right? Left the country. Well, what happened was he got married in the United States, not to the fiancée. And when you marry someone in the United States, you cannot request advance parole. So the advance parole was not for the fiancée. At that point, he was in violation of the K-1 restrictions, right? Correct. He could not – the K-1 restriction is he could not adjust status in the United States because he had never left the United States. So when he was given advance parole, the government says by mistake, but, hey, that happens. So the advance parole was based upon? The marriage to the U.S. citizen. This other U.S. citizen. Yes, which is valid. He's still married to her. It was not dependent on his K-1 status. Not at all. It couldn't be because it was a different person. Correct. All right. So your argument is so any K-1 disabilities terminated when he left the country. Became moot when he self-deported himself. Now, the next question is? What's the closest case that supports your position? Well, there's no case like that. The closest we got was Barney v. Rogers from the Ninth Circuit, which stated that when you leave the United States, the status you're in prior to leaving the United States becomes moot. In Barney, there was an overstate, an illegal overstate. The lady left and she came back and they said, hey, we're going to put you in exclusion proceedings, not deportation. She said, wait a minute. You know, I've got an advance parole. You let me out, so I should be in exclusion because that's more favorable, excuse me, deportation than exclusion. They said no. The Ninth Circuit said you cannot freeze your illegal activity in the United States by leaving on advance parole. Once you leave, you're giving up whatever relief you had in immigration. Immigration is within the borders of the United States. The State Department and also the visas that attribute to it are outside the borders of the United States. So what happened was Mr. Randhawa came back. He presented himself for admission and inspection. He was admitted. He was inspected and allowed to proceed back to the United States, his home in Washington State. So, therefore, at that point in time, he is a new person immigration-wise. Otherwise, as the illustration I gave you, you know, somebody who comes here and doesn't marry a fiancée, leaves within 90 days, does not violate any laws, comes back several years later and finds somebody else and marries that person, the law would still say he cannot adjust status because of that K-1 restriction. And I don't believe that's what Congress intended. You have to have a cutoff point. In immigration law he left pursuant to an advance parole that was erroneously granted as opposed to being correctly granted. Well, I don't think the erroneous part should be an issue. Erroneous to leave is what I'm getting at. One is you break up with the girl before the 90 days, you go back to India. Right. End of story. And then years later you come in to marry somebody else. That's fine. Another is you break up with the girl and you never go back. You stay in the United States. That's correct. You lose. That's kalal. That's kalal. The third is you break up, you stay in the United States, and then you get an erroneous grant of an advance parole because whoever gave you the advance parole didn't know that there was an outstanding deportation order that you didn't obey. And he didn't know about either. You don't leave pursuant to the deportation order and you don't leave just leaving without any rights. You leave with an erroneously granted advance parole. Should that be more like kalal or more like Bona and Barney? One thing about the deportation order, remember the case that it was in absentia. In absentia it's not as strict as just a deportation order. It's true. He didn't know there was a deportation order. Right, correct. As far as the record shows us. Right. But what he did know is he came in on a 90-day visa to marry somebody that he didn't marry, and it's 25 years overdue that he leave. No, no, no. It wasn't 25 years overdue, Your Honor. It was a couple years later that he left. The totality of the time is now between these appeals. I believe it's the four or five years when he left. He was married in 1999 and I believe in 2003. So he left maybe four or five years late. And so the distinction here is kalal would apply if he did not leave the United States and was contesting adjustment of status. However, the distinction is he did self-deport, and we have case law where if you stay over for six months more, you're three years barred. If you stay over for one year, you're ten years barred. But there is a time limit to that factor, and where it comes in is when you leave the United States. That's what kicks in the requirements. Here, when you self-deport, you've already said, okay, I'm done with K-1, regardless of whether there's an adjustment of status. The K-1 is a moot issue now. It's with immigration, and he is no longer in immigration status. He's with the State Department. When he comes back and immigration allows him in, this court and several other courts have said, okay, you're coming in as a new person, an arriving alien, which means that you start over again. The old issues of immigration, illegal overstay, illegal employment, those things are not part of the issues that will now bind you to the immigration court. Do you want to reserve some time, Mr. Williams? Yes, I would. Thank you, Your Honor. Thank you very much, sir. For the government. Thank you. Welcome to bring your water with you, if you'd like. Good morning. Good morning. May it please the Court. My name is Imran Zaidi. I represent and respond at the Attorney General. Your Honors, the question before the Court is whether the agency here properly applied the statutory bar found in Section 245D of the INA to petitioner's adjustment application, where a petitioner was admitted to the United States on a K-1 fiancé visa, but failed to marry the United States citizen who sponsored that visa. Counsel, this is really — To get to the issue, though, Mr. Wayne's position is, well, when the alien departed the U.S., he said self-deport, he was no longer, you know, subject to the K-1 restrictions. He's starting all over again because he's making a new entry into the U.S. Your Honor — That argument. Your Honor, and this is the argument the petitioner puts forth, that there's something, there's some kind of a — that it's being applied as a perpetual bar here. And it's simply not the case, given that he arrived in 1987 and violated the conditions of his visa. And at the time that he applied for his adjustment in 1999, at that point, as you pointed out before, he was immediately — Just a minute. Stop right there. Now, what's the — at that point, what would be the consequence of violating the conditions of the K-1 visa? At what point? Sorry. After he, you know, didn't marry the sponsor within 90 days. At that point, he was immediately — he was directly barred by 245D from adjustment. Means what? He was directly barred from 245 — Barred means what? Excluded from adjustment. Yes. When you say excluded from the U.S., you mean? No, no, no. I'm sorry. I'm speaking only in the context of adjustment of status right now. So when he overstayed his K-1 fiancé visa, he didn't marry the fiancé, nor did he leave the country within 90 days. At that point, he could not adjust. And this is direct language from the Supreme Court. We have no problem with that. He couldn't adjust his status means he was subject to deportation or removal, right? No, those are two — That's what he had to do. He had to leave the country, right? Right. But those are two — He couldn't adjust his status and adjusting — the purpose of adjusting your status so you can stay in the country, right? Yes. And he couldn't do that, and so his visa expired. He's subject to removal. That's correct. Well, he left the country. Your Honor — Why doesn't all that, you know — I don't know. I think he used the word melt away. Well, Your Honor, there's a couple of reasons why. There's somewhat extenuating circumstances here because it was an in absentia deportation order, which he was not aware of. And so he was granted advance parole in this situation, which — By mistake. By mistake. But the fact of the matter is that is the basis for his presence in the country at the time that his adjustment application was adjudicated. Right. So as you pointed out before, in 1999, when he applied for adjustment, he was absolutely subject to 245D. That situation is immediately governed by Claude v. Gonzalez, correct? So the only difference between then and the time that his adjustment application was adjudicated is that he sought and was granted advance parole for the purpose of pursuing that prior adjustment application. He left the country, and he's a new immigrant. No, Your Honor, and that's — Is that the difference? This is the extenuating circumstance here, is that he was granted — he sought and was granted advance parole, which is simply the benefit extended by the government of not deeming his adjustment application abandoned while he left the country. So he sought this benefit, and the government granted it solely so that he could pursue that very same adjustment application that was indisputably filed as a K-1 visa holder and so that he can come back into the country and file that. So Petitioner's argument here would have the somewhat absurd result that an adjustment application that was clearly barred at the time that it was filed was somehow freed from the bar because the government allowed them to leave and return and pursue that very same application. I missed something. What's the closest case that supports the government's position? Your Honor, there's no case that governs a situation where somebody's left on advance parole. Claude v. Gonzalez governs a situation up until 1999. Excuse me. The Board does rely here on matters of Stockwell because in that case, which involved a different provision of the 245D bar, that was the provision that applies to aliens in a conditional permanent resident status, but the Board in that decision focused on how different the language of the regulation was because it qualified the language and said that the bar only applied to an alien who was already lawfully admitted in a conditional permanent basis. Now here, there's no such qualifying language. I missed something and I need help on it. I can't remember whether his advance parole was based on the pending marriage to the woman he did not marry or the pending marriage to the woman that he did marry. To the woman that he did marry in 1999, not the original sponsoring fiancée. Yes, I apologize. So that was based on a marriage to somebody who was not his original sponsoring fiancée. Mr. Zia, I think I understood you to say there's no case directly on point dealing with this precise situation. Is that right? That is correct, Your Honor. And there's no statute that specifically addresses this exact situation. Is that true, too? As in somebody who didn't marry the original sponsor and then has returned on advance parole? That's correct, Your Honor. So then what do we do in a circumstance like that? Are we obliged to defer to the BIA or what? Well, that's certainly the case. In this situation, it's an unpublished decision. So in that context, there would be skid more deference would be entitled here, except to the extent that the Board relied on any precedential decisions. Which decision is that? Pardon me? Okay, what decision are you referring to? For in terms of deference? Yeah. Skid more. No, no, I mean the decision of the BIA. The Board's decision in this case is the one that I'm referring to, which is an unpublished decision. Are you going to rely on a case, too, or are you talking about? Pardon me? I misunderstood you also. Are you saying that we give skid more deference to the decision of the BIA rendered here or to a decision that they relied on? Exactly. No, the former, Your Honor, because the decision here was unpublished, except to the extent that this decision relied on a published decision, and it did here. It relied on a matter of Stockwell in some regard, and to that extent it would be entitled to Chevron deference. Stockwell is a published decision of the BIA. That's correct. That's correct. But that didn't involve exactly the same situation. It's similar, but not the same, right? Right, but the reason it's important here, Your Honor, it was not the K-1 visa, but it involved a different provision of 245D, which is a bar applied to aliens in conditional permanent resident status. And now the Board here distinguished that case because the language of that regulation said that the bar would only apply to aliens who were already lawfully admitted in that status. Here there is no word already in the implementing regulation for 245D here. So it is meant to apply to an alien who has been admitted, which is the situation here, on a K-1 fiancé visa, and has done nothing since that admission and the violation of that, the conditions of that admission until now, other than seek and be granted advance parole for the purpose of pursuing that previous application. This is very metaphysical because we pretend that things are other than what they physically are, like advance parole, you pretend they're at the border, that sort of thing. Sure. Could you take one, maybe two minutes, and just walk me through the logic of it from start to finish? Specifically for advance parole? For the whole case. Just walk me through the logic of why he can't get in. Certainly, certainly, Your Honor. In this case... Or what happened more generally. Sure, certainly. The petitioner entered the United States in 1987 based on a K-1 fiancé visa. At that time he was required, pursuant to that visa, to either leave the country or to marry the United States citizen who sponsored that visa, and to do one of those two things within 90 days. Now petitioner did neither. He instead remained illegally until 1999, 12 years later, at which point he married a different U.S. citizen and sought adjustment on that basis. Now at this point, as we've already discussed, I believe it's indisputable that his application at that stage would be governed by Kalal v. Gonzalez and 245D. He had come under a K-1 fiancé visa, violated those conditions, and now seeks adjustment based on a marriage to somebody else. The only difference... I think of the sections as U.S. code and you think of them... As the INA. Yeah, so... Sorry, Immigration Attorney, Your Honor, yes. It's 245, and I believe that is... I'm sorry, I don't have the book in front of me. You can go ahead. The INA, Section 245D of the INA. The only difference between that situation, the one that is directly governed by Kalal v. Gonzalez, and this situation then, is that petitioner here sought advanced parole. Now, advanced parole, again, to give you some background, advanced parole is simply advanced authorization that the Attorney General may do on a temporary basis, and it is solely done for the purpose of allowing an applicant to not abandon their application when they leave the country, so that they can return and continue pursuing it. Now, as part of that, they do... The government does not ignore their departure. They lose their status as a visa overstay, which is what happened here. But petitioner's argument that by abandoning that status and then returning as an arriving alien, rather than the status in which he left as a visa overstay, that somehow that change immunizes him from the 245... So they preserve their pending petition, but they lose their overstay status. That's exactly right, Your Honor. Okay, I think that's the key to it. That is. That is. And that's the distinction right here that petitioner is focusing on. He says that because he's now an arriving alien, that the government is somehow using this dual status theory. And frankly, Your Honor, the dual status argument here is a bit of a red herring. The fact of the matter is petitioner arrived in 1987 based on a K-1 fiancé visa. He violated the conditions of that, and he's done nothing since that time to correct that mistake. Sure, sure. He left the U.S. Your Honor, but he left the United States. Now I'm talking about in the context of advance parole. He left the United States solely so that he could return and continue pursuing that application. I thought you said the advance parole was based upon the second marriage or the second... Correct, Your Honor. Right. And that's... He's not pursuing the original application, is he? No, but that's exactly the point, Your Honor, because in pursuing the application based on his second marriage, that situation is directly governed by Kalal v. Gonzalez. That is exactly what 245D was enacted to prevent against, right? Coming into the country on a specific visa... But do what? Pardon me? I mean, you know, the consequence of that is you're subject to deportation, and he left. Well, again, and those are the extenuating circumstances here because he left. There is the outstanding deportation order, and he left under that, but he was not aware of it. And so the government granted him advance parole erroneously. Because he was not aware of it, it's not effective? No, Your Honor. What I'm saying is because he, the northern government apparently wasn't aware of it, he was granted advance parole, which means now he's in the country. He was allowed to reenter the country. Because of the event, because of the mistake of advance parole. Exactly. So to undo that mistake, which is one of the arguments he brings up, and I think this might be what you're getting at, undo the advance parole and say the government did recognize the outstanding deportation order. Even under those circumstances, the fact of the matter is his last admission to the United States would have been as a K-1 fiancé visa, and he still would have violated the conditions of that entry. And then without advance parole, in this hypothetical, I don't know under which situation he would be here, but presumably it would not be legal without advance parole or some other basis. Is there anything he could do when he wakes up 12 years later and decides I'm here, I want to marry somebody else, should have left earlier, but I didn't? What can he do? Absolutely, Your Honor. There's any of a number of different things he can do, and that's part of the problem here. He could leave the country and return based on several other valid visas. If he could be readmitted into the country on just about any other valid visa, presumably he would no longer be subject to the 245D bar. As a tourist, just go back to India with no right to return and then come back to the U.S. as a tourist on a tourist visa? On any other valid visa admission, including that, Your Honor, I believe he could return to the country and he would no longer be subject, either under statute or regulation, to the 245D bar. And that's what makes this case special. Petitioner keeps saying that he's, you know, this is being applied as a perpetual bar here. The fact of the matter is he's done nothing to correct the mistake that he made in 1987. So, Your Honor, the regulations briefly. If he could do that, if he could so easily avoid the problem, what is the point in erecting the barrier? Your Honor. If all he needs to do, since he didn't marry the one that brung him in the first place, is come back as a tourist and marry the new woman. Well, Your Honor, perhaps that's a question that's better asked of Petitioner because clearly he didn't do any of those things. And the situation here. Why should it matter? Why should what matter? How is the government prejudiced? It looks as though you're saying there's merely a technical. Oh, no. I'm sorry, Your Honor, if that's the impression I'm giving. I'm saying 245D was meant to prevent against exactly this situation. It was passed as part of the. Tell me the harms. Some harms I can really understand. Sure. Like a one-year rule for applying for asylum means you don't sneak in, stay until they catch you. Sure. And only then claim asylum. Sure. This rule I don't understand if it's so easily avoided by just coming in as a tourist instead of with an advanced parole. Well, I guess that's my point, Your Honor. I don't think it is that easily evaded in this situation. Petitioner obviously didn't. I think the harm here is to allow somebody in the future to do what Petitioner did here means that anybody could come to the United States based on a K-1 fiancé visa and fail to marry that person and then seek adjustment based on a marriage to somebody else later on. But they could, couldn't they? They could come on a K-1 visa, fail to marry that person, leave sometime, and come back on a tourist visa and marry somebody else. If they're validly admitted on a separate basis. And that's all of the statute meant to protect against. Incidentally, does this need a published opinion? Is this something that happens a lot, these erroneous advanced paroles? Your Honor, to be honest, I can't speak to that. I know there's not much jurisprudence in the federal appellate courts on K-1 fiancé visas. It may be because it never happens and it may be because nothing's generated an opinion, even though it does happen. It may be because the bar's actually been working and it's never gotten to that point. So if there's enough further questions, may I briefly conclude? Thank you, Mr. Zitti. If there's nothing else, thank you very much, sir. Mr. Wang, back to you. Thank you, Your Honors. One thing I'd like to call to the Court's attention is this validly admitted. Mr. Zitti says, you know, he can come back in any status that's validly admitted. According to your case law, according to Second Circuit, according to Fifth Circuit, whenever you return on an advanced parole, you are admitted as an arriving alien. If you're inspected and you're admitted and you're validly admitted. So if you take Mr. Zitti's argument about B-1 being validly admitted, E-2, F-1, whatever, he was validly admitted. The second point is he was correct. The advanced parole is based on a marriage to a U.S. citizen, which allows you to leave the United States and come back to pursue that petition, the adjustment of status. As I said previously, it does not protect other issues that are involved in there. For example, people have been in the United States for more than six months, for more than a year. They receive an automatic three-year tenure bar. If they weren't aware of this, they could get an advanced parole and then not be allowed back in. Therefore, although your status to adjust in the United States is protected, your other immigration violations, your other immigration issues are not. Here, Mr. Randhawa, the appellant, his status to adjust was protected, but his K-1 issue was not that disappeared. This court said, we do not freeze the issue of things other than adjusting your status. Is it true that he'd be totally out of the woods if he just left without an advanced parole, came back as a tourist, applied for an adjustment of status, married the woman, applied for an adjustment of status, and then got, I guess it would be a parole, I'm not really sure, or a different kind of visa because the petition for adjustment of status was pending? Is that true? If you're asking me if it's going to be difficult, Your Honor, it'll be almost impossible for him to come back. Why? He'd have to first go through the U.S. consulate or embassy, and they'll ask him, when was the last time you were in the United States? How long were you there? Were you there legally or illegally? If he said, I was there out of status for more than six months, they'll say automatically the law says you can't go back for three years. If you were out of status for more than one year, you can't go back for 10 years. That is the reason that he would never, ever be able to come back. So if he left without an advanced parole, he wouldn't be able to come back for 10 years? Yes, Your Honor. And I don't know if there are any other restrictions based on any other laws, like the absentia, deportation, or things. I believe the absentia is also 10 years, Your Honor. And one other thing, I believe we're getting amiss here when we talk about being here for so long, being here in illegal status. We've had this situation come up once before in 1987 when we allowed amnestia there for the people that were here, and we allowed all of those people who came forth to get their green cards. So it's not a matter of how long you've been here. It's a matter of when you choose to either legalize or when you get caught. In this instance, Mr. Rondawa found someone he could be with, and he got married to her. And the issue here is the thing is he filed a second and a third adjustment of status after the marriage. Kalaw would say that the first adjustment of status is invalid, it's void. I agree with Mr. Zaidi. But subsequent to the marriage, now he's married and now he files adjustment of status twice. That should not be within the K-1 restriction of 245-D. Thank you very much. Thank you, Your Honor. Mr. Wang, Mr. Zaidi, thank you as well. The case just argued is submitted. Good morning, gentlemen.
judges: Kleinfeld, Tashima, Silverman